UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD SAMSON,

    Plaintiff,

v.                                                    Case No.: 2:18-cv-274-FtM-38UAM

CITY OF NAPLES,

    Defendant.
_____/

### **OPINION AND ORDER**[1]

Before the Court are Plaintiff Richard Samson's Motion for Partial Summary Judgment (Doc. 40) and Defendant City of Naples' Motion for Summary Judgment (Doc. 38), along with each party's response in opposition (Docs. 47; 50). Also, Samson's Motion to Strike (Doc. 46) and the City's response (Doc. 52) are here. For the following reasons, the Court denies the motions.

### **BACKGROUND**

This is an American with Disabilities Act ("ADA") disability discrimination case for failure to hire.[2] Samson is a mechanic with diabetes. And diabetes makes him disabled under the ADA. When Samson applied for a position with the City, his disability

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] Samson also brings a claim under the Florida Civil Rights Act ("FCRA").

disqualified him for the job. Now, he sues the City for disability discrimination in violation of the ADA and FCRA. Here are the facts.

While looking for a new job, Samson came upon a posting for a City mechanic. (Doc. 38-6 at 26-27). In terms of mechanical skills, licensing, and experience, he was qualified in every way. (Docs. 40-5 at 1; 47-1 at 6). From the posting, nothing indicated that his physical fitness would be an issue. (Doc. 38-8 at 2). So he applied and interviewed before the City extended a conditional job offer. (Docs. 38-6 at 6, 33; 40-3 at 1v). Among other things, that offer was contingent on Samson passing a physical exam. (Doc. 40-3 at 1). When Samson learned the City required a Department of Transportation ("DOT") physical, he knew it was a problem. (Doc. 38-6 at 31-32).

A few years prior, Samson had issues with a DOT physical for a different job because he treats his diabetes with insulin. (Doc. 38-6 at 31-32). This was automatically disqualifying for the exam, absent an exemption. *Samson v. Fed. Express Corp.*, 746 F.3d 1196, 1199 (11th Cir. 2014). The DOT physical was a requirement of obtaining a Class B commercial driver's license ("CDL"), which City mechanics must have. (Doc. 38-3 at 14-15, 60). Yet Samson had a CDL because Florida allowed an exception for diabetics who drive intrastate. (Doc. 38-6 at 27-28, 36-37). It appears the City did not know about this exemption, but the City required passing the DOT exam for all mechanics nonetheless. (Doc. 38-3 at 15, 65-68).

Before taking the DOT test, Samson spoke to an employee in the City's human resources department. (Doc. 38-3 at 65-68). Samson told the employee about the state CDL exemption but went to the DOT exam anyway. (Docs. 38-3 at 65-66; 38-6 at 52). The DOT exam took place at Advance Medical Center. (Doc. 38-3 at 13, 67). Advance

Medical could not medically clear Samson for the mechanic position because he failed the DOT exam due to his diabetes and a recent hypoglycemic episode.[3] (Docs. 38-3 at 13; 38-4 at 3-4; 38-6 at 38; 38-10 at 2). When Advanced Medical told the City Samson was not cleared, the City rescinded the job offer. (Doc. 38-3 at 13, 65-67; 38-4 at 3-4).

## LEGAL STANDARD

Courts must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Disputes are genuine if the evidence could allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And material facts are those "that might affect the outcome of the suit under the governing law." *Id.* The moving party bears the burden to show that absence of a material fact and entitlement to judgment. *St. Paul Mercury Ins. v. F.D.I.C.*, 774 F.3d 702, 706 (11th Cir. 2014). At this stage, courts view all facts and draw all reasonable inferences in a light most favorable to the non-moving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

## DISCUSSION

### A. Samson's Motion to Strike

To define the contours of the facts, the Court addresses the Motion to Strike (Doc. 46) at the start. Samson moves to strike a declaration by the City's risk manager, Lori McCullers. (Doc. 46 at 1-2). Samson argues first that the declaration should be struck

---

[3] Importantly, Samson disputes the accuracy of the reported hypoglycemic episode. (Doc. 38-6 at 20-22). The Advanced Medical report noted a recent episode with loss of consciousness (Doc. 38-9 at 5), but Samson disputed this and claimed to have never lost consciousness (Doc. 38-6 at 20-22).

because McCullers' statements are conclusory and not based on personal knowledge of the mechanic position's essential functions. (Doc. 46 at 4).

Affidavits and declarations offered to support summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Non-compliant declarations are vulnerable to motions to strike. *See, e.g.*, *Pashoian v. GTE Directories*, 208 F. Supp. 2d 1293, 1297 (M.D. Fla. 2002).

McCullers has personal knowledge from her role with the City: "As Risk Manager, I am familiar with the job description and functions of the mechanic position." (Doc. 38-4 at 2). The Court can conclude she knows that the job requires mechanics to drive. *See, e.g.*, *Reyes v. AT&T Mobility Servs. LLC*, 759 F. Supp. 2d 1328, 1334 (S.D. Fla. 2010) (It was "reasonable to assume" that employees knew what coworkers "did during the normal course of their employment."). And McCullers stated that she dealt with the City's policy on the DOT exam, that policy directed action for DOT test failures, and that this action was taken for safety sensitive positions. *See* (Doc. 46-1 at 3, 5, 7). From this, the Court can reasonably conclude that McCullers had sufficient personal knowledge to declare the DOT test policy was for "safely meet[ing] the job's essential driving requirements." (Doc. 38-4 at 3); *see also Walters v. Cent. Fla. Invs. Inc.*, No. 6:01CV1390-ORL-JGG, 2006 WL 821858, at *2 (M.D. Fla. Mar. 28, 2006) ("As an employee of [d]efendants, [witness] may possess personal knowledge regarding [d]efendants' work policies and, to that extent, he may testify regarding those policies."). Thus, the Court finds that McCullers' declaration is based on personal knowledge.

Samson also argues the declaration contains inadmissible hearsay. (Doc. 46 at 5). Hearsay is an out of court assertion offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Samson does not identify which part of the declaration is inadmissible hearsay. Assuming that the purported hearsay is in the specifically challenged paragraphs, Samson's argument fails. Each assertion concerns facts about McCullers' own knowledge, not her testimony about others' statements. *See* (Doc. 38-4 at 2-3). Therefore, by definition, they are not hearsay. *See* Fed. R. Evid. 801(c)(1). To the extent other paragraphs of the declaration contain assertions from other declarants, they are not hearsay either.

Thus, the Court denies Samson's Motion to Strike.

**B. The City's Motion for Summary Judgment**

Under the ADA and FCRA, the Amended Complaint asserts two failure to hire claims. Because the analysis for each claim runs parallel, the Court addresses them together. *E.g.*, *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016).

Title VII's employment discrimination burden-shifting framework applies to ADA claims. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). And Samson must prove three elements for his *prima facie* case of disability discrimination: "(1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007); *see also* 42 U.S.C. § 12112(a). The parties agree that Samson is disabled under the ADA. (Docs. 38 at 7; 40 at 7).

The City moves for summary judgment on two grounds: (1) Samson failed to make a *prima facie* showing that he is a qualified individual (Doc. 38 at 7-14); and (2) even if he

did, there was a legitimate, non-discriminatory reason for refusing to hire Samson, and he failed to show that reason was pretext (Doc. 38 at 14-16). In part, Samson parries that he was qualified and there is enough pretext evidence to submit the question to a jury. (Doc. 47 at 9-19).

Preliminarily, although the City states Samson "failed to show that he is a qualified individual who was discriminated against because of his disability" (Doc. 38 at 7), the motion only addresses the qualified individual element (Doc. 38 at 7-14). Then, the City contends it had a legitimate, non-discriminatory reason to rescind the offer. (Doc. 38 at 14-16). As the City notes, legitimate, non-discriminatory reasons become an issue *after* a plaintiff makes a *prima facie* case. (Doc. 38 at 14); *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). Thus, the City failed to challenge Samson's showing on the third prong, so it is not addressed here.

*1. Qualified Individual*

To establish the second prong of his *prima facie* case, Samson must show he is a "qualified individual" for the job. 42 U.S.C. § 12112(a). A qualified individual is a disabled person "who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8); *see* 29 C.F.R. § 1630.2(m).

The first issue in this analysis is whether test driving is an essential function of the mechanic position. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n). Essential functions "are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Earl*, 207 F.3d at 1365. Courts evaluate essential functions on a case-by-case basis, considering many factors. 29 C.F.R. § 1630.2(n); *Holly*, 492 F.3d at 1258-59. Among those factors are an employer's judgment on what functions are

essential, an employer's written description of the essential functions, the time spent on those functions, and the consequences of not performing the functions, along with current and former employees' experience with the functions. *E.g.*, *Holly*, 492 F.3d at 1257-59. Every relevant factor supports finding that test driving is an essential function of the mechanic position.

First, the City considers test driving an essential function of the job. (Docs. 38-3 at 37-38; 38-4 at 2). Under the statute, the Court must consider this in its analysis. 42 U.S.C. § 12111(8). It may not be conclusive, but this factor is entitled to "substantial weight in the calculus." *Holly*, 492 F.3d at 1258 (citation omitted).

Second, the job classification specification lists test driving as an essential function of the mechanic position. (Doc. 38-7 at 2 ("ESSENTIAL FUNCTIONS[:] . . . Road tests vehicles to ascertain repair effectiveness.")). Again, this is a factor the Court must consider. 42 U.S.C. § 12111(8).

Third, the City's mechanics spend considerable time test driving. Depending on the week, a mechanic may test drive vehicles for an hour or two every day. (Doc. 38-5 at 12). These test drives could go a mile down the road or forty minutes up I-75 to Fort Myers. (Doc. 38-5 at 12). Aside from test drives, mechanics also respond to emergency calls, which may include driving. (Doc. 38-5 at 14-15). For instance, if a garbage truck broke down on the side of the road, a mechanic may need to rig up a roadside fix and drive it back to the shop for repairs. (Doc. 38-5 at 14-15).

Fourth, non-performance of the test-driving function could have severe consequences. Test drives may occur before a repair, to diagnose the problem, or after

7

a repair, to test its success. (Doc. 38-6 at 44-46). Either way, they are necessary to ensure the City's vehicles are safe on the roadways. (Doc. 38-6 at 44-49).

And fifth, the experience of current mechanics shows test driving is an essential function of the job. A current mechanic testified he test drives frequently (Doc. 38-5 at 12, 14). And the mechanic department supervisor specified it would be a hardship if a mechanic could not test drive. (Doc. 47-1 at 12-13); *see also* (Doc. 38-6 at 48-49) (Samson assumed test driving would be part of the position.).

Regarding essential functions, *Samson* is distinguishable without much fuss. 746 F.3d 1196. There, the Eleventh Circuit concluded there was a genuine dispute whether test driving was an essential function of a mechanic position Samson applied for a few years ago. *Id.* at 1202. But the mechanics there spent little time test driving vehicles— about four hours per year. *Id.* In this case, the evidence shows mechanics could spend a few hours per day test driving, depending on the week. (Doc. 38-5 at 12). Also in *Samson*, the employer easily could have reassigned driving duties to one of the other nine mechanics. 746 F.3d at 1202. Whereas, here, Naples employed four mechanics then and each must be able to drive at a moment's notice. (Docs. 38-5 at 14-15; 47-1 at 3-4).

After weighing those factors, the Court finds that test driving is an essential function of the mechanic position. *See* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n).

The second issue is whether Samson can test drive with or without reasonable accommodation. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m). Employers must reasonably accommodate disabled employees unless the accommodation results in an undue hardship for the employer. *Batson v. Salvation Army*, 897 F.3d 1320, 1326 (11th

8

Cir. 2018). Accommodations are reasonable if they allow an employee to perform the essential functions of a job. *See, e.g.*, 29 C.F.R. § 1630.2(o)(1). In general, undue hardship results from accommodations requiring "significant difficulty or expense incurred" by the employer. *Id.* at § 1630.2(p)(1); *see* 42 U.S.C. § 12111(10)(A).

The City's argues Samson cannot overcome his failure of the DOT exam. (Doc. 38 at 12). The City considers several factors to determine if an applicant can perform the test-driving function: (1) holding a CDL; (2) having a clean driving record; and (3) passing a DOT physical. (Docs. 38-4 at 3). While Samson has a CDL with a clean driving record (Doc. 40-5 at 1), he failed the DOT exam (Doc. 38-3 at 13). So, as the argument goes, he cannot test drive. (Doc. 38 at 12). Contrarily, Samson contends he can test drive and needs no accommodation. (Doc. 47 at 10-11, 15). Regardless, says Samson, he could perform the essential functions of a mechanic with reasonable accommodations such as an exemption from the DOT exam. (Doc. 47 at 16).

On this point, there is a genuine dispute whether Samson can test drive without accommodation. While the City relies entirely on Samson failing the DOT exam, it does not decide whether Samson *can* test drive vehicles. *See* 42 U.S.C. § 12111(8). For the mechanic position, the DOT exam is a qualification standard, which is an attribute a person must possess to be eligible for a job, such as "skill, experience, education, physical, medical, safety, and other requirements" established by an employer. 29 C.F.R. § 1630.2(q). The exam may be relevant as a tool for the City to use in deciding whether an applicant can perform the essential function of test driving, but it is not dispositive alone. *See Toole v. Metal Servs. LLC*, 17 F. Supp. 3d 1161, 1174 n.12 (S.D. Ala. 2014) ("[E]ven if driving were an essential function of the job, there is still a dispute as to what

type of driving is essential and whether [plaintiff] would be qualified, even without a DOT medical card, to perform his job."). The DOT exam is a part of federal regulations for interstate commercial drivers, but Samson has a valid CDL to drive vehicles within Florida. (Doc. 40-5 at 1). Moreover, Samson testified he could test drive the City's vehicles and has a clean driving record. (Docs. 38-6 at 36-37, 68). The City never rebuts this evidence. Instead, it doubles down on Samson failing the DOT exam for his insulin dependence and an alleged hypoglycemic event. (Doc. 38 at 12). But that cannot overcome the conflicting evidence to establish the absence of a disputed material fact over whether Samson can test drive vehicles. *See St. Paul Mercury Ins.*, 774 F.3d at 706 (stating the moving party must show an absence of material fact). Further, as Samson argues, the evidence weighs against finding interstate driving as part of the mechanic job (Docs. 47-1 at 13-14; 47-2 at 7), so the DOT regulations alone are not a complete defense for the City. *See Samson*, 746 F.3d at 1203-06.

Because the parties genuinely dispute whether Samson can test drive with no accommodation, summary judgment is inapposite.[4]

   *2. Legitimate, Non-Discriminatory Reason*

Once a plaintiff makes a *prima facie* case, there is a presumption of discrimination and the burden shifts to the defendant who must articulate a legitimate, non-discriminatory reason for its employment action. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). A defendant carries its burden by simply articulating a legitimate, non-discriminatory reason. *Cleveland*, 369 F.3d at 1193 (explaining the

---

[4] Given this conclusion, it is unnecessary to address the City's contention that Samson never identified or requested an accommodation. (Doc. 38 at 13-14).

10

employer only bears the burden of production).  This is a low bar.  *B/E Aerospace*, 376 F.3d at 1087-88.  An employer can rescind an offer for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  See *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) (citation omitted) (applying the rule in the Title VII context); *Belton v. U.S. Dep't of Agric.*, No. 6:17-cv-989-Orl-40TBS, 2019 WL 1130008, at *7 (M.D. Fla. Mar. 12, 2019).  If the employer rebuts the presumption, the burden reverts to the plaintiff "to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination."  *B/E Aerospace*, 376 F.3d at 1087.

The City argues in the alternative that, *prima facie* issues aside, the City offered safety as its legitimate, non-discriminatory reason to withdraw the offer.  (Doc. 38 at 14-16).  Specifically, the City had safety concerns when Advance Medical informed the City that Samson failed the DOT exam.  (Doc. 38 at 14-15).  So according to the City, it had a legitimate, non-discriminatory reason to rescind the offer, and Samson cannot show pretext.  (Doc. 38 at 15-16).  Samson says the City offered no evidence to support a DOT exam requirement for this position.  (Doc. 47 a 12-14).  He contends the DOT physical is neither job-related nor consistent with a business necessity for safety.  (Doc. 47 at 12-14).  By arbitrarily implementing the DOT testing without an individualized assessment, the City screened out Samson because of his diabetes.  (Doc. 47 at 13-14, 18-19).  So the City's purported safety reason is not non-discriminatory, and it was pretext to discriminate against Samson for his disability.  (Doc. 47 at 18-19).

Genuine issues of material fact exist because, like *Toole*, the reason offered by the City is arguably discriminatory.  17 F. Supp. 3d at 1178.  While the ADA allows

11

employers to require a medical exam after a job offer and condition the offer on passing the exam, such an exam must meet certain criteria. 42 U.S.C. at § 12112(d)(3). These exams are permissible if (1) all employees are subject to the test regardless of disability; (2) the information is kept confidential; and (3) exam results are used in accordance with Title I. *Id.* at § 12112(d)(3)(A)-(C). Here, it is undisputed that all City mechanics must take the DOT test. (Doc. 38-5 at 8-9; 38-4 at 3). And there is no indication of confidentiality concerns. So the question "turns on whether there was discrimination on the basis of disability" under Title I. *See Wetherbee v. S. Co.*, 754 F.3d 901, 904-05 (11th Cir. 2014) (citing 42 U.S.C. § 12112(d)(3)(C)). Without a doubt, Samson would have been hired if he passed the DOT test. (Doc. 38-3 at 13; 38-4 at 3-4; 47-1 at 6, 11; 47-2 at 3). At the time, a diabetic without an exemption automatically failed the DOT exam.[5] *Samson*, 746 F.3d at 1199. The City's safety concern is based solely on Samson failing the DOT test because he was an insulin-dependent diabetic who had a hypoglycemic episode. (Doc. 38 at 15). But the medical exam is a qualification standard that screened out Samson because of his disability, so the City must show the DOT test is job-related and consistent with a business necessity to rely on the exam as its non-discriminatory reason. *Samson*, 746 F.3d at 1205-06; *Toole*, 17 F. Supp. 3d at 1171-72, 1177-78; *see also* 42 U.S.C. § 12113(a); 29 C.F.R. § 1630.14(b)(3); *Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1317-18 (11th Cir. 2009). In *Samson*, the Eleventh Circuit specifically remanded for a determination on whether the DOT exam was an impermissible

---

[5] The regulations were amended and now allow diabetics to pass DOT physical if they meet certain criteria. 49 C.F.R. § 391.46. But the test here took place before that change.

12

qualification standard that discriminated against diabetics because the employer did not show the exam was job-related and a business necessity. 746 F.3d at 1205-06.

The City's summary judgment motion presents no argument on why the DOT exam is job-related and consistent with a business necessity. At most, the City contends safety concerns were its legitimate, non-discriminatory reason to rescind the offer. (Doc. 38 at 14-15). But again, its entire safety concern boils down to Samson's failure of the DOT exam. (Doc. 38 at 15). Without a discussion on whether the DOT exam is job-related and consistent with a business necessity, it is impossible to say the offered reason is non-discriminatory. *See Flowers*, 803 F.3d at 1338 (stating that the proffered reason must be non-discriminatory). Further compounding these problems, the parties dispute whether the City conducted an individualized assessment of whether Samson could perform the test-driving essential function despite failing the DOT test. *See E.E.O.C. v. Am. Tool & Mold, Inc.*, 21 F. Supp. 3d 1268, 1283 (M.D. Fla. 2014) ("[T]he results of the pre-employment screening may only be used to withdraw an offer of employment where an individualized determination reveals that the impairment will preclude the putative employee from performing the essential functions of the position."). While the City claims its determination was based on an individualized assessment in response to Samson's motion (Doc. 50 at 7-8), the evidence suggests Samson's failure of the DOT exam was dispositive. In short, there are a genuine issues of material fact over whether the City's alleged safety reason is non-discriminatory, so summary judgment is inappropriate.

The City raised business necessity as an affirmative defense and addressed the defense in its response to Samson's summary judgment motion. (Doc. 50 at 6-9). Yet that response is unhelpful here. There, the City again states the failure of the DOT exam

served as the basis of the decision to rescind Samson's offer. (Doc. 50 at 6-7). In the end, the City concludes a jury could find the DOT exam a business necessity for safety reasons. (Doc. 50 at 9). So, says the City, summary judgment is improper on Samson's motion, but proper on the City's because Samson failed to rebut its legitimate safety reason. (Doc. 50 at 9). The City's conclusion, however, suffers from the same issues identified above. If there is a genuine dispute over whether the DOT exam was a business necessity—which the City concedes (Doc. 50 at 9)—then there is a genuine dispute on whether the DOT exam is an impermissible qualification standard, making it an arguably discriminatory reason. *Samson*, 746 F.3d at 1205-06; *Toole*, 17 F. Supp. 3d at 1178.

Due to these factual issues, the City's Motion for Summary Judgment is denied.

**C. Samson's Motion for Partial Summary Judgment**

Samson moves for partial summary judgment on five of the City's six affirmative defenses. (Doc. 40 at 7). "Partial summary judgment may properly be granted on affirmative defenses." *Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1218 (M.D. Fla. 2007). But a plaintiff must show "the defendant cannot maintain the defense by a preponderance of the evidence." *Anderson v. Mascara*, 347 F. Supp. 3d 1163, 1175 (S.D. Fla. 2018). Each affirmative defense is addressed in turn.

   *1. Good Faith Defense*

The City asserted its actions during the hiring process were in good faith to ensure safety. (Docs. 18 at 3; 50 at 5-6). Samson says no, arguing it was bad faith for the City to subject Samson to DOT testing despite knowing he would fail. (Doc. 40 at 16). On this point, there is a genuine dispute of material fact. Further, Samson failed to show he is entitled to judgment as a matter of law as he cited just one distinguishable case about

a good faith defense to a breach of contract claim. (Doc. 40 at 16). Summary judgment on this defense is denied.

### 2. Business Necessity Defense

The City pled it had a business necessity to rescind Samson's offer. (Doc. 18 at 4). Samson responds neither the City nor Advanced Medical individually assessed whether he was a safety threat, so the City cannot rely on this defense. (Doc. 40 at 7-10). As discussed above, there is a genuine issue of material fact regarding whether the DOT test was a business necessity. Thus, summary judgment is improper on this affirmative defense.

### 3. Unqualified Individual Defense

As an affirmative defense, the City pled Samson is not a qualified individual. (Doc. 18 at 4). Not surprisingly, Samson contends he is qualified. (Doc. 40 at 10-12). But as the City responds, defenses that simply identify defects in a plaintiff's *prima facie* case are not affirmative defenses. (Doc. 50 at 9-10). Instead, courts treat those as specific denials. *Hepp v. Paul Revere Life Ins.*, 120 F. Supp. 3d 1328, 1351 (M.D. Fla. 2015). Seeing no reason to disagree, the Court will do so here and deny summary judgment. *See Maglione-Chenault v. Douglas Realty & Development, Inc.*, No. 2:13-cv-811-FtM-38CM, 2014 WL 1389575, at *3 (M.D. Fla. Apr. 9, 2014) (collecting cases).

### 4. Failure to Mitigate Damages Defense

Successful ADA plaintiffs may recover certain statutory damages, like back pay. *Lathem v. Dep't of Children and Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999)

(applying Title VII provisions).[6] To do so, plaintiffs must "mitigate their damages through reasonably diligent efforts to seek employment that is substantially equivalent." *Id.* A substantially equivalent position "affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status" as the job plaintiff did not receive. *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991), *superseded by statute on other grounds*, *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1347 (11th Cir. 2000).

The City alleged Samson failed to mitigate his damages. (Doc. 18 at 4). Samson disagrees because he secured a job as a mechanic with similar duties. (Doc. 40 at 12-14). In response, the City argues a jury could find Samson failed to mitigate his damages because he chose a position that does not provide health insurance. (Doc. 50 at 10). The Court concludes there is a genuine dispute of material fact on the mitigation issue. Health insurance can be recovered as part of a back-pay award. *Id.* at 1348. So the parties' factual dispute about whether Samson's new position is substantially equivalent presents a dispute for the jury to resolve. *See Degitz v. S. Mgmt. Servs., Inc.*, 996 F. Supp. 1451, 1463 (M.D. Fla. 1998); *see also Voss v. City of Key West, Fla.*, 24 F. Supp. 3d 1228, 1232-33 (S.D. Fla. 2014).

*5. Proximate Cause Defense*

The City pled its actions did not cause Samson's damages because he knew he could not pass a DOT physical. (Doc. 18 at 4). Samson parries he was qualified, so the City wrongfully rescinded his offer. (Doc. 40 at 14-15). Again, as the City notes, causation

---

[6] Certain provisions of Title VII, including 42 U.S.C. § 2000e-5, apply in ADA Title I actions. 42 U.S.C. § 12117(a).

16

ultimately goes to an element of Samson's *prima facie* case—whether he was subject to unlawful discrimination because of his disability. See Holly, 492 F.3d at 1261-62. So like the qualified individual defense above, the Court treats this as a denial and denies summary judgment. See Hepp, 120 F. Supp. 3d at 1351.

For those reasons, Samson's Motion for Partial Summary Judgment is denied.

Accordingly, it is now

**ORDERED:**

1. Samson's Motion to Strike (Doc. 46) is **DENIED**.

2. The City's Motion for Summary Judgment (Doc. 38) is **DENIED**.

3. Samson's Motion for Partial Summary Judgment (Doc. 40) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 26th day of June, 2019.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record